**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

| | |
|---|---|
| **UNITED STATES OF AMERICA**    ) | |
| ) | |
| V.    ) | |
| )   Case No. 4:24-cr-00070 | |
| **MICHAEL J. MACHONIS**,    ) | |
| ) | |
| Defendant.    ) | |

**DEFENDANT MICHAEL J. MACHONIS'S POSITION WITH**
**RESPECT TO SENTENCING FACTORS**

In accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section

6A1.2 of the Sentencing Guidelines and Policy Statements as well as the Sentencing

Procedures Order (Doc. 82), the Defendant, Michael Machonis ("Defendant" or

"Machonis"), by counsel, states that he has reviewed the Probation Officer's

Presentence Investigation Report ("PIR") and the following sets forth his objection to

the PIR, his position on sentencing, and his request for a sentencing variance.

**OBJECTION TO**
**PRESENTENCE INVESTIGATION REPORT**

Machonis has one objection to the PIR. He objects to the two-level enhancement

he received for knowingly engaging in the distribution of CSAM pursuant to USSG

§2G2.1(b)(3).  He withdraws his second objection.

**The Distribution Enhancement Under U.S.S.G. § 2G2.1(b)(3) Should Not Apply**
**Because Machonis Merely Requested That Billups Create and Send Explicit**
**Visual Material to Him**

Section 2G2.1(b)(3) of the USSG provides a two-level enhancement "[i]f the

defendant knowingly engaged in distribution."  The Sentencing Guidelines commentary

defines "distribution" broadly, *U.S. v. Hecht*, 470 F.3d 177, 182-183 (4ᵗʰ Cir. 2006), but it

Page | 1

also establishes a critical limitation: the definition "does not include the mere solicitation of such material by a defendant." USSG §2G2.1, comment. (n.1) (definition of "Distribution"). Where a defendant's conduct consists only of requesting that another person create child pornography and send it to him, the conduct falls within this express exclusion and therefore should not trigger the enhancement.

Application Note 1 to § 2G2.1 defines distribution as "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor." At the same time, the commentary makes clear that the definition has limits: it "does not include the mere solicitation of such material by a defendant." This exclusion demonstrates that the Sentencing Commission intentionally distinguished between two different categories of conduct: (1) acts involving the *transfer* or *dissemination* of illicit material, and (2) conduct limited to requesting or receiving such material. The commentary makes clear that the latter category — "mere solicitation" — does not constitute distribution. Where the defendant's role is limited to asking another person to create explicit material and send it to him, the conduct fits squarely within the category of solicitation that the commentary expressly excludes from the definition of distribution.

The decisions applying § 2G2.1(b)(3) illustrate that the enhancement is typically applied when the defendant personally participates in transferring the images. In *United States v. Hernandez*, for example, the defendant created sexually explicit images involving a minor and then transmitted those images to the minor herself. 894 F.3d 1104, 1106 (9th Cir. 2018). The court held that this conduct qualified as distribution because the defendant "transmitted those images via his cell phone," thereby

committing an act "related to the transfer of material involving the sexual exploitation of a minor." *Id.* at 1107.  Thus, the enhancement was applied in *Hernandez* because the defendant himself engaged in an act of transmission. The case does not address a situation in which the defendant merely requests explicit material and receives it. Instead, the defendant personally participated in the transfer of the illicit material.

The Fifth Circuit confronted a similar issue in *United States v. McGavitt*, 28 F.4th 571 (5th Cir. 2022). There, the defendant argued that the enhancement should not apply because his conduct amounted only to solicitation. The court acknowledged that the Guideline commentary creates tension between the explicit exclusion for "mere solicitation" and another commentary provision stating that a defendant "knowingly engaged in distribution" if he "aided, abetted, counseled, commanded, induced, procured, or willfully caused the distribution."  *Id.* at 577.  Importantly, the Fifth Circuit did not resolve that tension by definitively holding that solicitation constitutes distribution.  Instead, because the defendant had not preserved the objection, the court applied plain-error review and concluded only that any error was not "clear or obvious." *Id.* at 576-577.  The court emphasized that it had "not previously considered whether a defendant's coercing a minor to take and send images of child pornography qualifies as 'distribution' under § 2G2.1(b)(3)."  Critically, the Fifth Circuit did not reject that argument on the merits. Instead, the court acknowledged that the Guideline commentary creates "arguably some conflict" between the exclusion for "mere solicitation" and another commentary provision suggesting that a defendant who "induces" or "procures" distribution may be treated as having engaged in distribution. Because of this tension, the court concluded that any error in applying the enhancement

was not "plain," particularly since the circuit had not previously addressed the issue.

This reasoning is significant. The Fifth Circuit's analysis confirms that the solicitation exclusion in Application Note 1 has real force and that the interaction between the commentary provisions is genuinely debatable. The court's reliance on plain-error review indicates that, had the issue been properly preserved, the defendant's argument that solicitation does not constitute distribution would have been a viable one. Thus, rather than undermining the defense position, *McGavitt* demonstrates that the Guidelines themselves create a substantial question about whether solicitation can qualify as distribution.

Another court distinguished "distribution" from "solicitation" as follows:

> Although a defendant who uses peer-to-peer software and utilizes the "shared" folder may be enhanced for distribution, a defendant who downloads images or videos from a service that does not permit file sharing may be eligible for the receipt or solicitation reduction. *See U.S. v. Abbring*, 788 F.3d 565, 567–68 (6th Cir. 2015); *U.S. v. Conner*, 521 Fed.Appx. 493, 500 (6th Cir. 2013). This distinction is an important one, as a mere downloader's conduct is limited to receipt or solicitation, while a user of file-sharing software, who enables others to view and download his illicit images and/or videos, has not limited his conduct in this way.

*United States v. Shepard*, 661 Fed. Appx. 348, No. 15–3738 (6th Cir. Sept. 20, 2016).

Because the defendant merely requested and received images, the enhancement should not apply. The conduct at issue here fits squarely within the solicitation exclusion recognized in the Guideline commentary. The defendant requested that another person create the explicit visual material and send it to him. He did not transmit images to others, make them available for others to obtain, or otherwise participate in their dissemination. Under the Guideline's definition, such conduct constitutes "mere solicitation." Because the commentary explicitly provides that

solicitation is not distribution, the two-level enhancement under § 2G2.1(b)(3) should not apply.

<u>**ARGUMENT**</u>

The Sentencing Guidelines are no longer mandatory, but advisory.  In *Gall v. United States,* 552 U.S. 38, 47 (2007), the Supreme Court rejected:

> an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range.  [The Court] also reject[ed] the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.

*Id.* at 47.  Rather, the Court is required to consider the sentencing factors set out in 18 U.S.C. § 3553 and the other factors contained elsewhere in the U.S. Sentencing Guidelines in fashioning the appropriate sentence.[1]

---

[1] The section 3553 factors are as follows:

**(a) Factors To Be Considered in Imposing a Sentence.** — The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider —

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed —
  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B) to afford adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes of the defendant; and
  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for —

## 18 U.S.C. § 3553(A) SENTENCING FACTORS

### 1)    (a) Nature and Circumstances of the Offense

The nature and circumstances of the offense are correctly set forth in the PIR. ¶¶ 11 -19 (pages 5-11).  Machonis would add or highlight some facts for additional context.

First, despite the disturbing nature of the WhatsApp exchanges between Machonis and Billups, Machonis's request for child sexual abuse material (CSAM) had practically ceased when Billups sent him – unprompted – the first CSAM video.  On May 15, 2024, Billups messaged Machonis one word: "Ok."  Machonis did not reply.  Sixteen days later, on May 31, 2024, Billups messaged him again "Hey."  There were no other messages during that sixteen-day period.  On May 31, 2024, Machonis replied "Sup." Billups answered: "I haven't talked to u in a while I'm sorry."  She then sent him the first of the four CSAM videos.  Only at that point did Machonis re-engage her on the subject of child pornography.

Second, the videos themselves are extremely short.  In total, they last one minute and 43 seconds.  While the duration of CSAM does not always correlate to the harm it causes the subject or the degree of depravity, in this case less is actually less.

---

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines —
*    *    *
(5) any pertinent policy statement —
(A) issued by the Sentencing Commission . . . ; …
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After watching the videos, one would be hard-pressed to conclude that the two children – a 4-month-old boy[2] and 3-year-old girl – suffered any lasting psychological damage. To be sure, during one of the videos the 3-year-old girl does say "ow," but she does not cry or scream as if she is in any serious pain.

Furthermore, Machonis had no contact – either through social media or physically – with either of the victims.  His only contact was with Asia Billups, an adult.

Finally, it bears noting that there was no other CSAM found on Machonis's computer or his phone.  Apparently, this was the only CSAM material that was recovered.

### (b) The History and Characteristics of the Defendant

The PIR correctly summarizes Machonis's background.  Counsel for Machonis will highlight a few facts.  Machonis reported being sexually abused as child.  PIR ¶¶ 70-72.  In addition, he suffers from mental health issues, including ADHD, depression and autism spectrum disorder.  PIR ¶ 78-79. Though it is not part of the PIR, counsel for Machonis has received an Individualized Education Program ("IEP") for Machonis from when he was a 16-year-old sophomore at Bridgewater-Raritan Regional High School, in Bridgewater, New Jersey.  The IEP reflects that Machonis had been classified as "communication impaired" and "Specific Learning Disabled."  Counsel does not intend to file the IEP but will make it available to the Assistant U.S. Attorney, if so requested.

---

[2] In one part of the PIR, it says that the boy was approximately 6 months old.  In paragraph 24 it says that the boy was 4 months old.

**2)      THE NEED FOR THE SENTENCE IMPOSED**

(A)      TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT

In this case, the receipt of CSAM and coercion are always serious offenses. However, as noted above, the consequences for the child victims are likely minimal. These are not cases that involve the actual rape of children or substantial permanent injuries to others.  Here, the videos themselves lasted one minute and 43 seconds. That means that the mandatory minimum sentence of 10 years is over 3,000,000 times the length of the actual videos.

(B)      TO AFFORD ADEQUATE DETERRENCE

The mandatory minimum of ten years provides more than adequate deterrence for both Machonis personally and to deter others.  As far as personal deterrence, any sentence of ten years or more is certainly sufficient to deter Machonis (who is 30 years old).  The real question is whether there is any marginal deterrent effect if the Court imposes a sentence above the mandatory ten years.  Counsel for Machonis has absolutely no ability to guess at whether there it will have some marginal additional deterrent effect.  Finally, a sentence of 10 years should signal to the general public that such conduct will not be treated lightly and deter similar crimes.

 (C) TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT

Given Machonis's age of 30, a substantial sentence of any type will obviously protect the general public from further crimes by Machonis while he is incarcerated. Machonis otherwise has a minimal criminal record, and he has absolutely no record of violence.  An extended period of supervised release should be sufficient to protect the general public from future crimes by Machonis.

(D) To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.

Machonis does not appear to have any job skills per se so he would certainly benefit from some type of vocational training. It is anticipated that if he were eventually to be released, he would be banned from using the computer so a vocation that involves manual labor would probably be the preferred choice.

### 3)    The Kinds of Sentences Available

In this case, counsel is aware of no alternatives to incarceration. Counsel must serve a mandatory minimum sentence of ten years and will be on supervised release for a minimum of five years and up to life.

### 4)    The Kinds of Sentence and the Sentencing Range Established for this Offense

Here, Machonis must serve a mandatory minimum of 120 months for his convictions in Counts Two and Twelve of Coercion and Enticement, in violation of 18 U.S.C. § 2422(b ). Even if the Court rules in favor of Machonis on his objection, it appears his offense level would be at least a 43 and his recommended sentence is a term of life imprisonment.

### 5)    Pertinent Policy Statement

Machonis is aware of no policy statements issued by the Sentencing Commission pertinent to this particular offense.

### 6)    Unwanted Sentencing Disparities

In this case, Machonis's lone co-defendant, Asia Billups, was sentenced to fifteen years, which was the mandatory minimum for the offenses to which she pleaded guilty.

### Restitution

Restitution does not apply to this offense.

## ARGUMENT

Mr. Machonis's recommended sentencing range is a term of life imprisonment. That range for an individual who has almost no criminal record and never physically touched another person is simply absurd and would be far beyond what is "sufficient but no greater than necessary" to satisfy the § 3553(a)(2) sentencing factors. For that reason, Machonis is requesting a **variance** from the recommended sentencing range and asks that he be sentenced to the mandatory minimum of ten years for coercion and enticement and receipt of CSAM.

The mandatory minimum of ten years is more than sufficient but not greater than necessary to accomplish the purposes of the U.S. Sentencing Guidelines § 3553 factors.

Counsel for Machonis has attempted to put together a chart of sentencing ranges for individuals charged with child sexual abuse offenses or physical abuse of a child. All of this information was taken from press releases put out by the U.S. Department of Justice. Copies of those press releases are attached to this sentencing memo as Exhibit A. The chart shows that any sentence above 15 years would exceed what others who have committed similar or worse crimes have received.

| NAME | FACTUAL SUMMARY | SENTENCE |
|---|---|---|
| Austin Blair Johnson | Physically abused his minor daughter (MV1) who is now legally blind, non-verbal, and the entire right side of her body is paralyzed. | 15 years |
| Antonio Rudy Gonzalez | Gonzalez requested and distributed images of children, including toddlers, engaged in sexually explicit conduct, to multiple other Kik (social media platform) users. In his messages, Gonzalez indicated that he was "only into kids." In 2013, Gonzalez had **previously been convicted** in the Eastern District of | 22 years |

| | | |
|---|---|---|
| | Virginia of distribution of child pornography. His Kik username at that time was nearly identical to the one used in 2024, and he advertised himself as being interested in "little girls, rape, incest, teens." | |
| David Christopher Schaefer | Schaefer had been ***previously convicted*** in 2015 of possession of CSAM; search of Schaefer's residence located six unauthorized Internet-capable devices and three unreported storage drives. Among these were three smartphones, which Schaefer admitted to using to access, view, download, and exchange CSAM. On one of the phones, investigators found hundreds of images and videos of CSAM. Schaefer was attributed with over *25,000 CSAM images*. | 15 years |
| Hayden Scott Carpenter | Hayden Scott Carpenter, used social media platforms to engage in sexually graphic conversations with minors. An investigation revealed that Carpenter and Hood requested and received sexually graphic images and videos of the minors and sent sexually graphic images and videos to the minors. Carpenter and Hood *victimized dozens of minors*. | 15 years |
| Isaiah Luke Hood | Hood used social media platforms to engage in sexually graphic conversations with minors. An investigation revealed that Carpenter and Hood requested and received sexually graphic images and videos of the minors and sent sexually graphic images and videos to the minors. Carpenter and Hood *victimized dozens of minors*. | 20 years |
| Isaiah Amery Muniz | Muniz was engaged in the sale and distribution of child sexual abuse material (CSAM). From one of his Instagram accounts, Muniz encouraged a 12-year-old victim to produce and send CSAM to him, at one point offering to send the victim $50 via Cash-app. Later that day, Muniz, again using Instagram, unsuccessfully attempted to obtain CSAM from another suspected minor. Investigators identified approximately 800 CSAM images on Muniz's phone. | 10 years |
| Shane Matthew Harlacher | Harlacher used Facebook Messenger to send CSAM to another Facebook user.  In his immediate possession was a cellphone containing approximately 112 video files and 32 image files of CSAM, including a video of a toddler being sexually assaulted. It also contained numerous video and image files depicting surreptitious recordings of a 13-year-old victim, Jane Doe. Harlacher created these recordings of Jane Doe at the bathroom of his home in Virginia Beach. | 25 years |
| Zachary J. Vogt (E.D. Wisconsin) | Vogt began corresponding online with a minor child located in Oshkosh, Wisconsin. The exchanges between the two quickly became sexual in nature. The child's parents discovered the online activity and | 15 years |

| | | |
|---|---|---|
| | warned the minor and Vogt that all interaction must cease. Vogt ignored that warning. In June 2025, despite knowing that the child was underage, Vogt travelled from Pennsylvania to Wisconsin to engage in sexual activity with the child. Vogt sexually abused the child and recorded the abuse on his cellular phone. | |
| Skylar James Duvall | Duvall used a screen recording application that allowed him to create videos of what he was viewing on his computer screen to record a live streaming of a minor being sexually abused by her guardian. As the live stream was being recorded, Duvall chatted with the guardian to arrange a determined amount of time and payment to the guardian for certain sex acts to be committed against the victim. Investigators found additional CSAM on Duvall's electronic devices, including over 500 images and 700 videos of CSAM and thousands of files of potential CSAM and CGI/animated child exploitive videos and images. | 17 years |
| Brady Beck Fant | Fant used social media platforms to engage in sexually graphic conversations with minor girls. In addition to those conversations, Fant received sexually graphic images and videos of the victims and sent sexually graphic images and videos of himself to at least one victim. | 10 years |

Unlike the vast majority of the defendants identified above, Machonis had no personal contact with the victims. His only contact was with an adult, Asia Billups. Indeed, he never contacted, spoke with, or ever touched a minor. He did not have dozens of victims; he had two. He did not have dozens or hundreds of images. He had four. Under the circumstances, a sentence of 10 years for Machonis is sufficient but no greater than necessary to comply with the § 3553(a)(2) sentencing factors.

Respectfully submitted,

**MICHAEL J. MACHONIS**

By:_____/s/_____
Christian L. Connell (Bar No. 35009)
Attorney for Defendant Michael J. Machonis
CHRISTIAN L. CONNELL, P.C.

555 East Main Street, Suite 1102
Norfolk, Virginia 23510
757.533.6500
757.299.4770 (fax)
Email: christian.connell@outlook.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2026, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send an electronic notification (NEF) of such filing to all counsel of record.

By: _____/s/_____
    Christian L. Connell
    Bar No. 35009
    Attorney for Defendant Michael J. Machonis
    CHRISTIAN L. CONNELL, P.C.
    555 East Main Street, Suite 1102
    Norfolk, Virginia 23510
    757.533.6500
    757.299.4770 (fax)
    Email: christian.connell@outlook.com